IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
EASTERN DIVISION

WILLIE L. WHITE AND CHARLES EVANS JR., on behalf of themselves and others similarly situated,

Plaintiffs,

v.

PECO FOODS, INC.

Defendant.

Case No.: 4:07-cv-00018-KS-MTP

**DEFENDANT PECO FOODS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS**

Defendant Peco Foods, Inc., by and through its undersigned counsel, hereby submits its Memorandum in Opposition to Plaintiffs' Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-In Right and shows as follows:

## I. INTRODUCTION

Plaintiffs seek conditional class certification under §16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(B) covering potentially in excess of 1,000 current or former employees at Peco Foods, Inc's ("Peco Foods") chicken processing plant located in Bay Springs, Mississippi (the "Plant"). Plaintiffs seek a class of all current and former hourly, non-exempt employees at the Plant since February 9, 2004 whose time is "recorded under a system known as line time, master time, master key, gang time, etc." ("hourly employees"). By Plaintiffs' own definition, this class explicitly includes both processing and shipping employees. They only attach one declaration from an individual who is a line employee, and four declarations from

employees who are involved in the shipping process. The Declarants claim they were not paid for time spent donning and doffing sanitary clothing and related activities while employed in violation of the FLSA.[1]

It should be noted at the outset that numerous courts have held that time spent on donning and doffing and related activities is not compensable under the FLSA.[2] Moreover, as will be shown below, Peco Foods compensates its employees for time spent engaged in donning, doffing and related activites.

Peco Foods submits that the motion should be denied for four reasons. First, this Court should not decide Plaintiffs' motion until it has decided Defendant's motion to transfer. On October 16, 2006, a collective action raising identical issues to this action captioned *Leslie Barber, et al. v. Peco Foods, Inc.*, Case No. USDC-NAL No. 7:06-2054-LSC, ("*Barber*") covering all of Peco Foods' six chicken processing plants located in Alabama and Mississippi, including the Bay Springs plant, was filed in the United States District Court for the Northern District of Alabama. Given that the *Barber* case was filed nearly four months prior to the present action and the issues in the two cases significantly overlap, the first to file rule requires that this Court hold decision on Plaintiffs' current motion for notice and, instead, grant Defendant's motion to transfer this action to the Northern District of Alabama.[3]

---

[1] Hereinafter, Peco Foods may refer to donning and doffing and related activities as "D & D".

[2] Donning and doffing of the type of light weight protective sanitary clothing worn in this case is not compensable under the FLSA. See Pressley v. Sanderson Farms Inc., No. 00-420, 2001 U.S. Dist. LEXIS 6535 (S.D. Tex. Apr. 20, 2001), aff'd 33 Fed. Appx. 705 (5th Cir. 2002); Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994); Anderson v. Pilgrim's Pride Corp., 147 F. Supp 2d 556 (E.D. Tex. 2001), aff'd 44 Fed. Appx. 652 (5th Cir. 2002); Bejil v. Ethicon, Inc., 125 F. Supp. 2d 192 (N.D. Tex. 2000). Though it has no obligation under the FLSA to pay for such donning and doffing, Peco Foods pays its employees for certain non-production activities, as described in Section II.B below.

[3] See Defendant Peco Foods, Inc.'s Motion to Transfer Pursuant to the First to File Rule, Case 4:07-cv-00018-KS-MTP, Document 17, Filed 8/16/2007; Memorandum in Support of Defendant's Motion to Transfer Pursuant to the First to File Rule, Case 4:07-cv-00018-KS-MTP, Document 18, Filed 8/16/2007.

Second, in the event the Court were to deny Defendant's motion to transfer, Plaintiff's motion should be denied due to the threshold issues presented by Section 203(o) of the Fair Labor Standard Act. Under Section 203(o), Plaintiffs' claims are barred as a matter of law in any facility that is subject to a bona fide collective bargaining agreement and which maintains a practice of compensating (or not compensating) employees for donning and doffing activities. Since the Plant at issue in this action is such a facility, Plaintiffs' claims are barred as a matter of law and the Court does not need to address Plaintiffs' Motion for Notice.

Third, in the event the Court were unwilling to decide 203(o) issues on a preliminary basis at this time, Plaintiff's motion should be denied because the Plaintiffs cannot meet the threshold requirement under the FLSA of showing that all the hourly employees at the Plant are similarly situated by being subject to the same policy of denying compensation for donning and doffing activities. Specifically, the Plaintiffs have not and cannot offer **any** evidence that all of the hourly employees were subject to a plant-wide practice regarding denial of payment for donning and doffing and related activities. Indeed, the only evidence offered in the declarations pertains to allegations by principally "line" employees that they were only paid under a "master time" system, which they allege did not include time spent on donning and doffing activities. The declarations offer no evidence of a plant-wide practice of denying donning and doffing compensation for all line or other hourly employees.

From the attached Peco Foods declarations, it is clear that there is no uniform policy or practice at the Plant regarding denying payment for such activities for line or other hourly employees, but rather that employees are in fact compensated for donning and doffing activities. However, the hourly employees have different jobs and use different sanitary equipment depending on each job. Further, the manners of recording and the methods regarding payment

for time differ among job classifications within the Plant. Based on this undisputed record, Plaintiffs have not shown that the potential class members are similarly situated.

Finally, the Plaintiffs cannot show that individualized issues will not predominate the resolution of the claims. Because Peco Foods has compensated employees for donning, doffing and related activities at all relevant time, resolution of the merits of Plaintiffs' claims will require a highly individualized examination whether such compensation is adequate for each employee. Given the myriad of circumstances regarding such activities at the Plant, each opt-in plaintiff's claims will be highly individualized, rendering trial unmanageable on a representative basis. Peco Foods will have individualized defenses that will necessarily vary by opt-in plaintiff. For these reasons, Plaintiffs cannot meet the minimal standard of demonstrating they are "similarly situated" to all of the Plants' hourly employees.

## II. STATEMENT OF FACTS

### A. Overview

The Plant is a "Live Kill" processing plant. The Plant generally operates two processing shifts which kill and process a number of chickens which varies day to day. The Plant consists of multiple departments, including varying processing departments, a shipping department, a maintenance department, a sanitation department, and a quality assurance department. The means of pay, the manner in which compensable time is measured, the types of protective and sanitary clothing worn, break and work schedules and other characteristics of employment are significantly different for employees working in each of these departments.

### B. Various Methods for Recording Time Worked

Although Plaintiffs allege that they were all paid on the basis of "line time," Peco Foods in fact uses a number of different methods to ensure that employees are properly paid, including the following:

**1. Start Punch to End Punch ("punch time")**

A number of employees that Plaintiffs seek to include in the proposed class and that have filed consents are paid based upon timecard swipes. Employees paid based upon punch time are required to swipe a time clock upon arriving at the Plant and prior to leaving at the end of their workday. Such employees include employees in the shipping department, which Plaintiffs have explicitly included in their motion.[4] Under such payment method, the employees put on the clothing after they have swiped in, and they take off such clothing before they have swiped out.[5] Therefore, they perform those donning, doffing and walking activities on paid time.

**2. Scheduled Departmental Time**

Many processing line employees at the Plant are paid based upon scheduled departmental time with both a scheduled start time and a scheduled stop time for their department.[6] As a general matter, the first processing shift, which experiences more predictable starting and stopping times, employs this method.[7] These employees are paid from one minute prior to their scheduled start time until one minute after their scheduled stop time in order to compensate for donning and doffing activities ("plug time").[8]

---

[4] Exhibit 1, Affidavit of Mack Blakeney at ¶ 5.

[5] Exhibit 1, Affidavit of Mack Blakeney at ¶ 9.

[6] Although this method of payment is referred to by Plaintiffs as "master time" or "line time," employees' paid time in not limited to time that the processing line is operating. As detailed below, line processing employees paid by this method also receive compensation for D & D performed while the processing line is not operating.

[7] Exhibit 2, Affidavit of David Glaser at ¶ 6; Exhibit 3, Affidavit of Larry Smith at ¶ 5.

[8] Exhibit 2, Affidavit of David Glaser at ¶ 7; Exhibit 3, Affidavit of Larry Smith at ¶ 6.

**3. Scheduled Start Time and Variable End Time**

Many departments in the Plant have a scheduled time to begin work each day with an undetermined time for ending work.[9] For such departments, their shift ending time is determined upon the completion of the work each day. Generally, this method of pay is used for second processing shifts in which employees must work until work in process is completed. These employees are paid from one minute before their scheduled start time until one minute after their punch out time in order to compensate for donning and doffing activities ("plug time").[10]

**4. Scheduled Time with Additional Time for Additional Duties**

Throughout the Plant there are line processing employees who receive the paid time for departments for which they are assigned and are additionally paid extra minutes for duties they perform prior to the start up of the processing line or following completion of the processing in their department ("line time plus").[11] Such employees are generally Lead Persons who perform various set up or clean up duties.[12]

**5. Break Schedules**

As with start and stop time, each department in the Plant has its own way in which it records break time. Some departments have a 'control person' swipe a time card for the department as a whole before and after each break.[13] Further, some employees within certain departments an additional three extra paid minutes for donning and doffing at break time.[14]

[9] Exhibit 2, Affidavit of David Glaser at ¶ 6.

[10] Exhibit 2, Affidavit of David Glaser at ¶ 6.

[11] Exhibit 2, Affidavit of David Glaser at ¶ 7.

[12] Exhibit 2, Affidavit of David Glaser at ¶ 7.

[13] Exhibit 3, Affidavit of Larry Smith at ¶ 5.

[14] Exhibit 3, Affidavit of Larry Smith at ¶ 6.

Therefore, resolution of Plaintiffs' claims will require a detailed examination of the practices regarding breaks for each job description, as well as the start-stop recording practices for each job description.

**C. Sanitary Garments**

Among the employees whom Plaintiffs seek to include in the proposed class, there are significant distinctions in the types of sanitary clothing worn while performing job duties. The combination of clothing worn depends upon the particular department, production line, position, shift, and individual in question as garments are often a function of personal preference. It would be impractical to list every distinction among departments, production lines, positions, shifts and individuals in terms of they type of protective gear worn. The most significant distinctions are detailed below.

The clothing may include varying combinations of the following items: plastic aprons, cloth gloves, smocks, hair nets, beard nets, boots, ear plugs, goggles, and freezer suits.[15] Employees who use a knife or scissors may also wear a cut-resistant glove. Production employees may also wear some of the required sanitary clothing necessary for their job from home including aprons, gloves, boots and freezer suits.[16]

Some of the employees to be included in Plaintiffs' proposed class wear a cotton smock in performing their duties on the processing line.[17] Where cotton smocks are worn, employees pick up a clean laundered smock from a bin in or near their work areas at the beginning of their

[15] Exhibit 4, Affidavit of David Glaser at ¶¶ 5-7.

[16] See, for example, Exhibit 4, Affidavit of David Glaser at ¶¶ 5-7. Furthermore, it is well established that the donning and doffing of any required garments or gear by employees at home is not a compensable activity.

[17] Exhibit 4, Affidavit of David Glaser at ¶ 6.

shift and place the smock in a laundry bin at the conclusion of their shift.[18] Other employees, on the other hand, are required to wear aprons which may be worn from home.[19] Further, another group of employees that Plaintiffs are seeking to include in this action may choose to wear freezer suits or goggles, although they are not required to do so.[20] Because Plaintiffs seek compensation for activities such as putting on and taking off the cotton smocks and other gear, the requirement to wear such smocks or other gear, or the absence of any such requirement, will clearly be a significant issue in resolving Plaintiffs' claims. Because employees within the Plant in different job classifications have different requirements and options for clothing worn, such employees cannot be said to be similarly situated.

## III. ARGUMENT

### A. The First to File Rule Dictates That This Action Be Transferred to the Northern District of Alabama Prior to Entertaining Plaintiffs' Motion for Notice

As explained in Defendant's Motion to Transfer pursuant to the First to File Rule and supporting memorandum filed on August 16, 2007 (Docket Numbers 17 and 18), a case captioned *Leslie Barber, et al. v. Peco Foods, Inc.*, Case No. USDC-NAL No. 7:06-2054-LSC, ("*Barber*") was filed on October 16, 2006 in the United States District Court for the Northern District of Alabama. The *Barber* action was filed nearly four months prior to the current action and involves virtually identical collective action claims against Peco Foods as to the Bay Springs Plant. In fact, at least seven of the persons who have filed consents to join this action had previously become parties asserting the same claims in the *Barber* case and at least 255 of the

[18] Exhibit 4, Affidavit of David Glaser at ¶ 6.

[19] Exhibit 4, Affidavit of David Glaser at ¶ 6.

[20] Exhibit 4, Affidavit of David Glaser at ¶¶ 7 & 11.

persons that Plaintiffs' are seeking to include in this case have already joined the *Barber* case either as original or opt-in plaintiffs.

The only question for this Court to decide is whether the issues in the two cases substantially overlap.[21] Under the first to file rule, if the parties and issues have a likelihood of overlapping, then this matter must be transferred to the Northern District of Alabama because the Fifth Circuit "adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."[22] The Fifth Circuit has emphasized that "once the likelihood of substantial overlap between the two suits has been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed."[23]

In Defendant's Motion and Memorandum to Transfer pursuant to the First to File Rule, Peco Foods clearly establishes that the parties and issues in this case and the *Barber* case already substantially overlap and have the likelihood of continuing to overlap. Therefore, it is out of this Court's discretion to rule upon Plaintiffs' Motion for Notice. Rather, the first to file rule requires this Court to transfer this action to the Northern District of Alabama, for that court to decide whether and how this action should proceed. As a result, Plaintiffs' Motion for Notice should be denied pending transfer.

**B. Plaintiffs' Motion for Notice Should Not Be Entertained Prior to Examination of the Issues Presented by Section 203(o) of the FLSA**

The Bay Springs Plant is a union plant covered by a collective bargaining agreement and workers are represented by the Laborers' International Union of North America.

---

[21] Save Power Ltd. V. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997).

[22] Cadle Co. v. Wataburger of Aliace, Inc., 174 F.3d 599, 606 (5th Cir. 1999)(citing Save Power Ltd., 121 F.3d at 948).

[23] Cadle Co., 174 F.3d at 606 (citing Mann Mfg. Inc. v. Hortex, Inc., 439 F. 2d 403, 407 (5th Cir. 1971)).

The collective bargaining agreement has been negotiated and contains previsions regarding paid and unpaid breaks, hours of work, shift starting and ending times. The existence of a collective bargaining agreement and the established practice of compensating employees for donning and doffing at the Plant, as shown above, present a preliminary issue that the Court should address prior to ruling on Plaintiffs' Motion for Notice.

Section 203(o) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(o), excludes from the definition of "hours worked," in the context of the FLSA's minimum wage and maximum hours provisions, "time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."[24] Therefore, in any facility that is subject to a bona fide collective bargaining agreement and which maintains a practice of compensating (or not compensating) employees for donning and doffing activities, plaintiffs claims are barred as a matter of law. As a result, Section 203(o) is a threshold issue that would bar any Plaintiffs' claims as a matter of law and Peco Foods submits that the Court should address the Section 203(o) issue before ruling on Plaintiffs' Motion for Class Notice.

**C. Plaintiffs Have Not Made The Threshold Showing Required to Conditionally Certify a Collective Action.**

In the event this Court is unwilling to address the Section 203(o) issue as a preliminary matter at this time, Plaintiffs motion still must be denied for failure to make the threshold showing required to conditionally certify a collection action. District courts have discretionary power to authorize the sending of notice to potential class members in a collective

[24] 29 U.S.C. § 203(o); see also Anderson v. Cagles, Inc., 2007 WL 1662662 (11th Cir. June 11, 2007).

action brought pursuant to 29 U.S.C. Section 216(b) of the FLSA. The power to authorize such notice must, however, be exercised with discretion and only in appropriate cases.[25]

An FLSA action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees **similarly situated."** 29 U.S.C. Section 216(b) (emphasis added). Therefore, in order to maintain a collective action under 216(b), the Plaintiffs must establish that the potential plaintiffs are "similarly situated" employees. [26] The plaintiff bears the burden at all times of demonstrating that the other employees are similarly situated.[27] Federal courts that have considered the similarly situated standard have held that it requires a showing that *"putative class members were together the victims of a single decision, policy, or plan."*[28] This statutory requirement "provides for unified trial preparation, prosecution and defense on what appears to be a single [unlawful] decision motivating all the [employment actions] at issue."[29]

In order to conditionally certify the class, the court must be convinced that common questions to the potential class would predominate individual issues.[30] Where there is no uniform, common policy or plan denying compensation for donning, doffing and related

---

[25] Haynes v. Singer Co., 696 F.2d 884, 886 (11th Cir. 1983).

[26] Hoffman-La Roche, Inc. v Sperling, 493 U.S.165, 169-70 (1989); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001).

[27] Grayson v. K-mart, 79 F.3d 1086, 1096-97 (11th Cir 1996); Olivio v. Gmac Corp., 374 F. Supp. 2d 545, 547 (E.D. Mich. 2004).

[28] Theissen v. General Elec. Corp., 267 F.3d 1095, 1102 (10th Cir. 2001); Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D. N.J. 1988), aff'd in relevant part, 862 F.2d 439 (3d Cir. 1988), aff'd 493 U.S. 165 (1989)(emphasis added).

[29] Sperling, 118 F.R.D. at 407.

[30] Sheffield v Orius Corp., 211 F.R.D. 411, 413 (D.Ore. 2002); Mike v. Safeco Ins. Co., 274 F. Supp. 2d 216, 200 (D. Conn. 2003)

activities, but rather a variety of individualized issues, class-wide treatment is unmanageable.[31] Therefore, where there is no single common employer plan, policy or practice denying compensation for donning and doffing activies, and where resolution of claims instead requires individual factual determinations and defenses, courts prudently have declined to allow lawsuits to proceed as collective actions under section 16(b) because absent such a uniform action or policy of denying compensation, a collective action would quickly degenerate into a series of mini-trials on each putative class member's claims, rendering the matter completely unmanageable and inappropriate for class treatment.[32] Such is the case here.

**1. Plaintiffs' Declarations are insufficient to establish a single decision, policy or plan of denying compensation for donning, doffing and related activities**

To satisfy the "similarly situated" standard requirement all putative class members must be subject to a "single decision, policy, or plan" of the defendant that has caused the alleged statutory violation.[33] To meet this burden, plaintiff must make "detailed allegations that demonstrate that others are similarly situated supported by affidavits which successfully engage defendant's affidavits to the contrary."[34] The affidavits must go beyond alleging mere

---

[31] Dunn v. County of Muskegon, No.1:97-cv-1003, 1998 U.S.Dist LEXIS 19032, at *25 (W.D. Mich Nov. 5, 1998) (court reluctant to grant certification where numerous proofs which vary as to each individual will predominate over any common questions); Brooks, 164 F.R.D. at 569 (declining to certify collective e action as the court would be faced with numerous individual defenses); and Sheffield, 211 F.R.D. at 413 (denying certification where "each claim would require extensive consideration of individualized issues of liability and damages").

[32] See Brooks v. Bellsouth Telecomms., Inc., 164 F.R.D. 561, 567 (N.D. Ala. 1995), aff'd 114 F.3d 1202 (11th Cir. 1997)(request for class certification denied where claims of proposed opt-in plaintiffs would present disparate factual and employment settings and individualized defenses); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1215 (5th Cir. 1995)(request for class certification denied because other than "global allegations" of plaintiffs, no real commonality among named plaintiffs and opt-in members).

[33] Thiessen v. General Elec. Corp., 267 F.3d 1095, 1102 (10th Cir. 2001); Olivio, 374 F. Supp at 548; Brooks v. Bellsouth Telecomms., Inc., 164 F.R.D. 561, 566 (N.D. Ala 1995), aff'd 114 F.3d 1202 (11th Cir. 1997); and Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 406-07(D.N.J.1988), aff'd in relevant part, 862 F.2d 439 (3d Cir. 1988), aff'd 493 U.S.165 (1989).

[34] Grayson, 79 F.3d at 1097 (internal quotation omitted).

similarities between job duties and pay "because without such a requirement, it is doubtful that section 216(b) would further the interests of judicial economy , and it would undoubtedly present a ready opportunity for abuse."[35]

The affidavits must show: (1) there is a single decision, policy or plan that caused the alleged violation; and (2) there are no individualized issues that make collective treatment inappropriate. Peco submits that plaintiffs have not made either showing.

Plaintiffs rely heavily on the Eleventh Circuit's suggested two-tiered approach to certification of Section 216(b) opt-in classes under Hipp v. Liberty Nat'l Life Insurance Co., 252 F.3d 1208, 1218-19 (11th Cir 2001). Significantly, the Eleventh Circuit made it very clear in Hipp that "nothing in our circuit precedent … requires district courts to use this approach."[36] Moreover, even at the first stage of conditional certification under Hipp, while the evidentiary burden may be light, the Plaintiffs must still come forward with evidence of similarly situated employees.[37] They must show that the individuals to whom notice would be sent had similar jobs and were subject to similar pay provisions.[38]

In addition, proof of the existence of a common policy or plan is relevant to court's discretion in granting conditional certification since the underlying rationale for granting a collective action is to preserve judicial economy.[39]

---

[35] Horne v. United Serv. Auto. Ass'n, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003).

[36] Hipp v. Liberty Nat'l Life Insurance Co., 252 F.3d 1208, 1219 (11th Cir 2001). See also Slaughter v. CVS Rx Services Inc., 2004 U.S. Dist. LEXIS 30034 *10 (N.D. Ala 2004).

[37] Grayson v. Kmart Corporation, 79 F.3d 1086, 1096 (11th Cir 1996).

[38] Dybach v. Florida Dept' of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

[39] Hoffman-La Roche Inc v. Sperling, 493 U.S. 165, 171-173 (1989); Robinson v. Dolgencorp, Inc., 2006 U.S. Dist LEXIS 85471 (M.D. Fla. 2006).

The undisputed attached declarations show that the plaintiffs have not met the above standard for either similar jobs or similar pay provisions. Moreover, they have not even addressed why proceeding as a collective action would conserve judicial resources. There are numerous job classifications that would apparently be included in the class proposed by Plaintiffs. Plaintiffs offer no evidence whatsoever of similarities between line employees and other processing employees. Employees whom Plaintiffs would propose to include in the class are paid for their processing duties through a variety of different methods as detailed above. Processing employees are also paid for donning, doffing and related activities. Any time spent cleaning, donning, doffing or walking is paid in one of the above-described manners. The manner in which employees are paid for such activities also varies among job classifications in order to properly compensate employees for donning and doffing activities according to the circumstances of their particular jobs. The jobs at issue also involve wearing varying combinations of sanitary clothing. The declarations offer no evidence of any similarities between these employees and the line employees with regard to job duties or pay for donning, doffing, cleaning or walking activities.

This court is clearly at liberty after Hipp to require evidence of a plant-wide policy or plan for processing employees regarding denial of payment for donning, doffing, walking and cleaning time, before deciding that judicial economy is best served by lumping together the claims of different people in different jobs under different pay systems. The only conclusion that can be drawn from the evidence is that Peco employs a variety of methods to compensate employees for such activities. Rather, the practice regarding compensation for such activities depends on the job classification, department, shift, equipment and processing stage. Any determination of the adequacy of compensation for such activities will require an evaluation of each individual's circumstances. Significantly, in the form declarations attached to the motion,

not one of the witnesses testifies about his or her shift, department or job classification. Indeed they only make reference to one method of calculating work time, "master time." The affidavits submitted in support of this memorandum establish that Peco Foods does not use "master time" or "line time" as described by Plaintiffs. Rather, Peco Foods includes paid time to compensate employees for donning, doffing and related activities.

Rather than providing "substantial evidence" of a single decision, policy or plan by which they have been denied compensation in violation of the FLSA, Plaintiffs simply provide form, fill-in-the-blank declarations from seven individuals at the Plant. These declarations are not merely identical to each other; each also is materially identical to scores of other declarations filed to support class notice motion in other actions against Peco at five other plants and other employers.[40] These declarations fail to provide any information regarding the individual's department, job classification or donning and doffing activities. The declarations only make boiler-plate, conclusory allegations indicating that all processing labor "admittedly is unskilled, it is similar in nature" and, therefore, "all hourly employees are interchangeable." Conclusory assertions and boilerplate filings are consistently rejected as proof of matter that are decided by written submission.[41]

In fact, four of the five declarations filed in support of Plaintiffs' motion contain misrepresentations of the facts. Specifically, Antonio Perryman, Joe Jordan, Lenneat McClain and Willie Stevens are or were all paid pursuant to the punch time method and not by "master

---

[40] See Exhibits 5 - 11, which are materially identical declarations filed to support class notice in other actions against Peco Foods, Gold Kist, Pilgrim's Pride, Tyson Chicken, Southern Hens, and Wayne Farms.

[41] Ramon v. Continental Airlines, Inc., 153 Fed. Appx. 257 (5th Cir. 2005); Gallender v. Empire Fire & Marine Ins. Co., 2007 WL 325792 (S.D. Miss. 2007); Myers v. Victoria's Secret, 2007 WL 1289709 (S.D. Miss. 2007); Barnes v. U.S. Dept. of Navy, 95 Fed. Appx. 46, 50 (5th Cir. 2004); Galindo v. Precision Am. Corp., 754 F.2d 1212, 1216 (5th Cir. 1985).

time" or "line time" as described by Plaintiffs and as attested to in their declarations. As a result, this Court can be certain that Plaintiffs cannot show that they are similarly situated.

**2. Numerous courts recently have refused to conditionally certify a class of employees who are not governed by a single decision, policy or plan.**

In Fox v. Tyson Foods, Inc., a case strikingly similar to the instant case, the court held that in assessing requests for class certification during the notice stage a court must determine: (1) whether there are other parties who wish to opt-in to the action; and (2) whether those parties are similarly situated with respect to their job requirements and pay provisions.[42] To demonstrate that they are similarly situated to the proposed class, Plaintiffs must do more than merely recite the lenient standard for the Court.[43] Again, to satisfy this burden, Plaintiffs must make "*substantial allegations that the putative class members were together the victims of a single decision, policy or plan.*"[44]

The Fox court denied a group of chicken-processing plant workers' motion to certify a class on the grounds that that the plaintiffs failed to "put forth substantial evidence the proposed class members are the victims of a single plan … not to compensate for donning and doffing time."[45] In so holding, the court held that the claims could not be "adjudicated without individualized determinations" because the uncontroverted evidence established that the named

---

[42] Fox v. Tyson Foods, Inc., No. 99-1612 (N.D. Ala., Memorandum Opinion Nov, 15, 2006 at 8-9)(emphasis added)(citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001))(A copy of the Fox Memorandum Opinion is attached as Exhibit 14); Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir.l 1991).

[43] Horne v. United Servs. Auto Ass'n, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003); see also Bernard v. Household Intern, Inc., 231 F. Supp. 2d 433, 4e35 (E.D. Va. 2002).

[44] Fox at pp. 8-9 (citing Theissen, 267 F.3d at 1102), Exhibit 14; Sperling, 118 F.R.D. at 407 (emphasis added).

[45] Id. at p. 12.

plaintiffs were compensated for donning and doffing time at a number of its facilities depending on the plant, department and even line at issue.[46]

Tyson used "line" or "mastercard" time to calculate pay for the line employees. Tyson paid the line employees only for the time spent on the line as recorded on a mastercard. The plaintiffs alleged this system excluded the time spent donning and doffing from paid time. Tyson introduced evidence, however, that some employees in the proposed class are compensated for donning and doffing on a plant-by-plant, department-by-department and even a line-by-line basis. In addition there was no evidence that the CEO, who was the only person who could adopt a corporate-wide plan, ever directed that such a plan be adopted.

Given this evidence, the court concluded there was no single plan to not pay line employees for donning and doffing. The court also concluded that given these differences adjudicating the claims as a collective action was not manageable or appropriate:

> The evidence before the Court is that Tyson does not maintain a single, uniform plan among its chicken processing plants of not compensating employees for time spent donning and doffing protective gear. To the contrary, Tyson has presented uncontroverted evidence that clearly demonstrates that some employees, who are members of the Named Plaintiffs' proposed class, are compensated for donning and doffing time at a number of its facilities on a plant-by-plant, department-by-department, and even on a line-by-line basis. Also, all parties have submitted evidence that the only way in which Tyson could adopt a corporate-wide plan of not compensating its employees for the donning and doffing of safety gear is at the direction of Tyson's CEO. There is no evidence whatsoever that Tyson's CEO has directed that such a plan be adopted. The only conclusion to be drawn from this evidence is that Tyson does not have a single plan to not compensate employees for donning and doffing time. Rather, there is evidence before the Court which indicates that the decision regarding compensation for donning and doffing time rests with the individual plant managers, department heads, or line managers. While the Named Plaintiffs allege that they have each not been compensated for time spent donning and doffing safety gear, this alleged injury is not the result of a single decision or plan on Tyson's part; therefore, the members of the

[46] Id.

> proposed collective action class cannot be similarly situated as the Named Plaintiffs propose.[47]

Likewise, here the differences within job classifications, shifts, departments and processing stages regarding methods of payment and payment for time spent donning, doffing, cleaning and walking preclude any finding of a common policy denying Plaintiffs' compensation to which they are entitled under the FLSA. In fact, the Plant currently uses multiple methods for calculating hours worked in combination with different methods of compensating employees for time spent engaged in such ancillary activities as donning and doffing.

In Horne v. United Servs. Auto Ass'n, the plaintiff alleged that he was denied overtime under the FLSA and requested notice to be sent to a class of "similarly situated" persons. In support of this request, plaintiff did nothing more than provide naked assertions that he was performing similar work to others at his place of employment. Acknowledging the lenient standard employed in assessing "similarly situated," the court found that a plaintiff must provide detailed allegations substantiated by affidavits to meet the standard. Specifically, the court noted that a plaintiff must demonstrate "commonality between the basis of his claims and the potential claims of the proposed class, beyond mere facts of job duties and pay provision," otherwise litigation under Section 216(b) would be abusive.[48] The court denied plaintiff's request to send notice based on plaintiff's failure to meet this lenient standard.[49] Emphasizing the plaintiffs' evidentiary burden, the court explained that the class "must share more than a common

---

[47] Fox v. Tyson Foods, Inc., at 12-13 (copy attached as Exhibit 14).

[48] Horne, 279 F. Supp. 2d 1234.

[49] Id. at 1237; see also Grayson v. K-Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996), cert. denied, 117 S. Ct. 435 (1996)(plaintiff "bear[s] the burden of demonstrating a reasonable basis for their [class allegations]" and this requires "detailed allegations supported by affidavits"); Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir. 1983)(district court did not abuse its discretion in denying class notice based on unsupported allegations); H&R Block, Ltd. V. Housden, 186 F.R.D. 399, 400 (E.D. Tex. 1999)(conclusory allegations of similar treatment insufficient to support notice).

allegations that they were denied overtime … The class members must put forth a common legal theory upon which *each* member is entitled to relief."[50]

Here, there is a glaring lack of evidence of a single plant policy or practice denying employees compensation for donning, doffing and related activities, thus making conditional certification of the proposed class inappropriate. Moreover, resolution of Plaintiffs' claims will require an examination of varying circumstances for each employee such as personal preferences regarding clothing worn when and where such clothing is optional and when employees choose to don and doff clothing. As was the case in Fox and Horne, Plaintiffs here cannot demonstrate that members of the putative class were subject to a single policy, plan or scheme denying compensation for donning and doffing activities. Instead, Plaintiffs provide no legal support for their assumption that the time spent donning and doffing is compensable. Following their unsupported assumption, Plaintiffs contend that they and all other Peco "co-laborers" are similarly victims of an improper pay policy. Yet, courts have previously upheld similar pay practices (see discussion below). Without evidence of an unlawful policy or plan, their Motion should be rejected.[51]

**3. Federal courts have approved pay practices similar to those at Peco Foods.**

Lending further credence to the position that time spent donning and doffing is not compensable is the fact that other chicken processing companies have defeated similar claims in

[50] Sheffield v. Orius Corp., 211 F.R.D. 411, 413 (D. Ore. 2002); see also Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 119 (D. D.C. 2004)(quoting Sheffield); De Luna-Guerrero v. N. Carolina Grower's Ass'n, 338 F. Supp. 2d 649, 654 (E.D. N.C. 2004)(parties in a collective action must "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime").

[51] See Saxton v. Title Max of Ala., 431 F. Supp. 2d 1185 (N.D. Ala. 2006); Villatoro v. Kim Son Restaurant, L.P., 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003).

the past.[52] In Anderson v. Pilgrim's Pride Corp., production employees paid by "line time" claimed that they were not properly compensated for donning and doffing. The Anderson court evaluated the similar issues as are currently before this Court and determined the donning and doffing "activities performed by the line employees … [did] not constitute compensable work."[53] Moreover, noting that donning and doffing could be accomplished within "a matter of seconds" and that it was common for employees to don and doff while walking, the Anderson court found even if the time was compensable that the time spent donning and doffing was *de minimis*.[54] That decision was affirmed by the Fifth Circuit.[55]

The evidence offered by both Plaintiffs and Peco Foods in this matter demonstrate that Peco Foods' employees use sanitary clothing in much the same way as the facilities at issue in the Anderson litigation. Therefore, contrary to Plaintiffs' arguments, the only proper conclusion is that the time spent donning and doffing is not compensable – both because it is not work and because the amount of time is *de minimis*.

In many cases the time spent donning and doffing items such as hairnets, earplugs, smocks and disposable aprons is not compensable "work" under the FLSA as a matter of law. Section 4(a) of the Portal-to-Portal Act, 29 U.S.C. § 254(a), expressly excludes from compensable work "preliminary" and "postliminary" activities. Applying this authority, *many*

---

[52] Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d 556, 561-62 (E.D. Tex. 2001).

[53] Id. at 562.

[54] Id. at 559-564.

[55] Anderson v. Pilgrim's Pride Corp., 44 Fed. Appx. 652, 2002 U.S. App. LEXIS 13429 (5th Cir. 2002).

*courts have concluded that time spent donning and doffing lightweight, simple items such as shirts, hairnets, and earplugs is not compensable*.[56]

Many of the claims are also barred by the *de minimis* rule and the statute of limitations. Under the FLSA, insubstantial or insignificant periods of time beyond the employees scheduled working hours that cannot be recorded for payroll purposes as a practical administrative matter may be disregarded lawfully.[57]

Plaintiffs' claims of similarity rest on the vague, general allegation that all Peco Foods' employees are required to don and doff sanitary clothing, that they are not paid for that time, and *that time is compensable under the law*. Plaintiffs' entire argument fails because the law clearly provides that time spent donning and doffing is not compensable.

**C. Individual Issues Predominate This Litigation**

Regardless of whether this court adopts the Hipp approach, Plaintiffs must also show that there are no individual issues that render collective or class action treatment inappropriate. Such a showing is required because the underlying rational for granting a collective action is to preserve judicial economy.[58]

---

[56] See Alvarex, 339 F.3d at 903; Pressly, 2001 U.S. Dist. LEXIS 6535; Reich v. IBP, Inc, 38 F.3d 1123; Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d 556; Bejil v. Ethicon, Inc., 125 F. Supp. 2d 192; see also Pirat v. U.S. Postal Service, 2006 WL 3590072.

[57] 29 C.F.R. § 785.47.

[58] Hoffman-La Roche, Inc., 493 U.S. at 171-73; Robinson, 2006 U.S. Dist LEXIS 85471, at *9-10; Dunn, 1998 U.S. Dist. LEXIS 19032, at *25; Brooks, 164 F.R.D. at 569 (declining to certify collective action as court would be face with numerous individualized defenses"); Sheffield, 211 F.R.D. at 413 (denying certification where "each claim would require extensive consideration of individualized issues of liability and damages" and "be mired in particularized determinations of liability and damages, other than collective consideration of common questions of law and fact"); see also Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 871 (S.D. Ohio 2005)(it was a "valid concern" that "fact-intensive, individualized inquiry" necessary for resolution of the matter was "not amendable to a collective action"); Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d at 1139, n. 6 (to proceed with a collective action, the issues "must not be distinct and specific to individual plaintiffs"); Ray v. Motel 6 Operating, L.P., 4 Wage & Hour Cas. 2d (BNA) 573, 576, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996)("[T]he court must also look to specific factual similarities or differences and manageability concerns"); Mike, 274 F. Supp. 2d at 220-21 (denying collective action because plaintiff did not "provide evidence of a common thread binding his proposed class of employees"); Theissen, 996 F. Supp. at 1081; Bayles v. American Med. Response, 950 F. Supp. 1053, 1066 (D.

The facts to be considered by the Court in deciding whether individual issues make collective treatment inappropriate include: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations.[59]

The Court must also consider prejudice to the defendant that is likely to result from trying individual claims together.[60] Where non-uniform policies or decisions are formulated and implemented on a decentralized basis, making individualized determinations and defenses necessary, the courts refuse to permit collective action treatment.[61]

Unless plaintiffs are willing to concede that the number of minutes in each instance is adequate, the question of whether Peco has an obligation under the FLSA to pay any individual for donning, doffing and related activities even if they were compensable under the FLSA (Peco denies that the FLSA makes such activities of Plaintiffs compensable) will be the principle issue the court or a jury will be asked to resolve in determining Plaintiffs' claims. Even under the Plaintiffs' theories (which Peco vigorously disputes) the resolution of this question will require a detailed examination of:

- the number of minutes paid in each department or to each job classification;
- the type of gear worn by employees in each job classification;

Colo. 1996); Basco v. Wal-Mart Stores, Inc., Case No. 00-3184, 2004 U.S. Dist. LEXIS 12441, at *8 (E.D. La. July 1, 2004).

59 Mooney, 54 F.3d at 1213, n.7 (5th Cir. 1995)(quoting Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987), vacated in part, modified in part and on remand, 122 F.R.D. 463 (D.N.J. 1988)).

60 Bayles, 950 F. Supp. at 1067 (citing Lusardi).

61 See England v. New Century Fin. Corp., 370 F. Supp. 2d 504 (M.D. La. 2005)(declining certification where individual inquiries predominate the case).

- the manner in which any protective clothing is distributed at the beginning of the shift or discarded at the end of the shift;
- as to Plaintiffs' claim they should be paid for walking, a determination of the walking distance between the location in which they dons or doffs sanitary clothing and their workstation;
- practices with regard to whether certain items of sanitary clothing can be worn from home or is required to be donned or doffed in the plant.

These determinations will be obviously fact specific and will depend upon the facts and circumstances not only present in each department but, in many cases within each job classification within those departments.

**D. The Two Year Statute of Limitations Applies to This Action**

Finally, Plaintiffs do not offer any basis for any claim that the normal two-year statute of limitations should not apply. Under the FLSA, the statue of limitations is just two years; the three year period applies only if the plaintiff proves the violation was "willful."[62] As their Complaint expressly shows, they base their claims on the November 2005 decision of the Supreme Court in IBP, Inc. v. Alvarez, 546 U.S. 21 (2005). That decision – as to the specific issues it addressed – resolved a split between the circuits over application of the FLSA. It would be curious indeed to suggest that prior to November 2005 an employer was "willfully" violating the standards that were not established in Alvarez until November 2005. Prior to that time, there were federal appeals court judges who believed and ruled that the law was different than the Supreme Court later ruled.[63] No employer can be held to have "willfully" violated the FLSA

---

[62] 29 U.S.C. § 255(a).

[63] See e.g. Tum v. Barber Foods, Inc., 360 F.3d 274 (1st Cir. 2004), affirmed in part and reversed in part, IBP, Inc. v. Alvarez, 546 U.S. 21 (2005).

when, at the time, it was acting consistently with rulings of federal appeals courts. Employees whose claims are arguably barred by the two-year limitations period should not be included in any class.

## IV. CONCLUSION

For all the foregoing reasons, Peco Foods respectfully requests that Plaintiffs' Motion be denied.

Respectfully submitted this the 18th day of September, 2007.

By: s/D. Chris Lauderdale
D. Chris Lauderdale
JACKSON LEWIS LLP
One Liberty Square
55 Beattie Place, Suite 800
Greenville, SC 29601
(864) 232-7000

L. Dale Owens
JACKSON LEWIS LLP
1900 Marquis One Tower
245 Peachtree Center Avenue, N.E.
Atlanta, GA 30303
(404) 525-8200
(404) 525-1173

Stephen J. Carmody
Brunini, Grantham, Grower & Hewes, PLLC
1400 Trustmark Building
248 East Capitol Street
Jackson, MS 39201

ATTORNEYS FOR DEFENDANT
PECO FOODS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this original document, DEFENDANT PECO FOODS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS was filed with the Court via Case Management/Electronic Filing system on this 18th day of September, 2007, and notice thereof was served in accordance therewith via electronic mail, to:

Mike Espy, Esq.
Lamar Life Building
317 E. Capitol Street, Suite 101
Jackson, MS 39201
Tel: (601) 355-9101
Fax: (601) 355-6021

Richard Celler
Morgan & Morgan
284 S. University Drive
Fort Lauderdale, Florida 33324

By: s/D. Chris Lauderdale
D. Chris Lauderdale